UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | No. 12-cr-10045-MLW |
| MARK E. RITA | ) ) ) | |

**UNITED STATES' RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM**

The United States, by undersigned counsel, hereby responds to Defendant's Sentencing Memorandum. On April 6, 2012, Defendant pleaded guilty to one count of accessing child pornography with intent to view in violation of 18 U.S.C. § 2252(a)(4)(B). Defendant, through counsel, has requested a sentence of probation.

## FACTUAL BACKGROUND[1]

In September 2009, a Special Agent of the FBI conducted an undercover online session by connecting to the Internet by computer from his station at the FBI Office in Tulsa, OK. Using peer-to-peer (P2P) software, the agent searched the network with the term "10yo," a term commonly associated with child pornography involving a ten-year-old, and received a response from a specific IP address.

The agent viewed the file available for sharing and download from the user at the IP address and saw 91 files, several of which had filenames suggestive of child pornography including "Private Mellony stolen video pedo Lolita pthc hussyfan preteen nude (10yo) 02.jpg." The agent downloaded seven files.

The IP address ultimately resolved to Defendant, Mark Rita of Haverhill, MA.

---

[1] These facts were presented during the Rule 11 plea colloquy.

1

On December 8, 2009, a search warrant was executed at Rita's home, and agents seized, among other things, a desktop computer, a laptop computer, and two hard drives.  Rita was given and acknowledged his Miranda warnings, and signed a voluntary waiver.

Rita stated he had been viewing adult pornography for several years, but grew bored and began to experiment with child pornography.  He would view adult and child pornography during the day when his wife and children weren't home.  Rita used Limewire to search for child pornography using the terms "LSM," "LSP," "Rancho," and "PTHC."  He stated that he feared getting caught by his family, so he never saved or stored any images, deleted his browsing history, and used the sweeping program "Window Washer."

Rita was shown the seven images downloaded by the agent, and he confirmed that he had viewed these particular photographs hundreds of times over the years.

FBI examined the seized computer media, all of which were manufactured outside the District of Massachusetts.  An HP desktop contained hundreds of temporary Internet files of adult and child pornography and over 900 thumbnails of child pornography.  The computer also had a P2P Limewire folder with four images of child pornography, two images focusing on young girls' clothed buttocks, and four thumbnail images depicting child pornography.  The thumbnails were located in a Desktop folder named "Feel Good."  Two external hard drives also contained approximately 87 images of child pornography.

The child pornography[2] included the following files:

(a)  "private daughter Mellony stolen pedo Lolita pthc hussyfan preteen nude (10yo) 02.jpg" – A naked prepubescent child with her legs bound with rope.

(b)  "private daughter Mellony stolen pedo Lolita pthc hussyfan preteen nude (10yo) 04(1).jpg" – A naked prepubescent child with her torso and pelvic area bound and knotted with rope.

---

[2]  During the Rule 11 plea hearing, the Court inquired as to availability of the child pornography files in this case. The recovered child pornography is available for review by the Court.

 (c) "private daughter Mellony stolen pedo Lolita pthc hussyfan preteen nude (10yo) 06.jpg" – A naked prepubescent child with her legs spread apart and her genitals exposed.

 (d) "private daughter Mellony stolen pedo Lolita pthc hussyfan preteen nude (10yo) 17.jpg" – A child performing oral sex on an adult male.

The National Center for Missing & Exploited Children (NCMEC) identified 75 child pornography image files from 22 child pornography series involving known children on Rita's computer media. The child pornography series identified by NCMEC were all produced outside the District of Massachusetts.

## ARGUMENT

With potential sentences in mind, the government elected to charge Defendant with accessing child pornography with intent to view, and not receipt or transportation of child pornography. Both receipt and transportation of child pornography were imminently provable and each would have carried a five-year mandatory minimum imprisonment sentence. See 18 U.S.C. §§ 2252(a)(1) & (a)(2).

Here, the government intends to advocate for a period of incarceration below the applicable guideline range.[3] However, as Defendant has attacked the validity of U.S.S.G. § 2G2.2, the government asserts the courts have not been uniform in their conclusions. See, e.g., United States v. Blinkinsop, 606 F.3d 1110, 1116 (9th Cir. 2010) (affirming 97 month guideline range sentence for receipt of child pornography and noting that "Blinkinsop's arguments omit the recognition that the children depicted in the pornography that he received, viewed, stored, and transmitted are the real victims of his crime and that time is required for the sex-offender

---

[3] The government intends to recommend a significant term supervised release to follow the term of incarceration. Additionally, representatives of the child victim depicted in one of the child pornography series recovered from Defendant's computer – the "Jan_Feb" series – have submitted a restitution request. Her submission has been forwarded to the Probation Officer. The government will request that restitution also be a component of Defendant's sentence.

treatment during incarceration that Blinkinsop needs for his child-pornography addiction");
United States v. Alfaro-Moncada, 607 F.3d 720, 735-35 (11th Cir. 2010) (affirming 87 month guideline range sentence for possession of child pornography and noting that "term of imprisonment at the lowest end of his advisory guidelines range was lenient enough"); United States v. Cunningham, 680 F. Supp.2d 844, 853, 860-64 (N.D. Ohio 2010) (imposing 121 month guideline range sentence for receipt, distribution, and possession of child pornography and rejecting "any contention that the Guidelines should not be given deference").[4]

The First Circuit has made clear that sentencing courts have significant discretion post-*Kimbrough* and that discretion includes the freedom to agree with a sentencing range produced by U.S.S.G. § 2G2.2:

> [A] district court is free to agree with the guidelines (or, at least, some particular guideline). Part of this freedom must be a freedom to agree with the guidelines because the sentencing court believes that the guidelines express some societal wisdom beyond what an entirely unrestricted sentencing judge might possess. Thus, part of the sentencing court's broad discretion must be the discretion to conclude that guidelines are convincing for various reasons, including that they reflect popular will. … We see no reason why it would be somehow invalid for a district court, in its broad sentencing discretion, to conclude that its reason for rejecting a *Kimbrough* variance is that it values congressional input. If these results seem inconsistent, it is only because a sentencing court's discretion is so broad. After *Kimbrough*, the law allows one judge

---

[4] The Supreme Court's decision in Kimbrough v. United States, 552 U.S. 85 (2007), does not require courts to evaluate the history and development of a particular Guideline before sentencing within the range it produces. As the Seventh Circuit has stated:

> A sentencing judge is free, as we said, to reject a guideline as inconsistent with his own penal theories; and rejecting a guideline as lacking a basis in data, experience, or expertise would thus be proper. But we do not think a judge is required to consider, not a nonfrivolous argument that a guideline produces an unsound sentence in the particular circumstances of the case, but an argument that a guideline is unworthy of application in any case because it was promulgated without adequate deliberation. He should not have to delve into the history of a guideline so that he can satisfy himself that the process that produced it was adequate to produce a good guideline. [Citations omitted.] For if he is required to do that, sentencing hearings will become unmanageable, as the focus shifts from the defendant's conduct to the "legislative" history of the guidelines.

United States v. Aguilar-Huerta, 576 F.3d 365, 367-68 (7th Cir. 2009).

>  to find that congressional input makes a sentence less empirical,
>  and so less appropriate, while another judge may reasonably find
>  such input makes the sentence more reflective of democratic
>  judgments of culpability, and so more reasonable.

United States v. Stone, 575 F.3d 83, 93 (1st Cir. 2009).

Arguably, Congress's contributions to the child pornography guidelines are equally as valuable as the empirical data and experience supporting them:

> Furthermore, "[e]ven though a guideline is affected by
> congressional adjustment, a sentencing court may rely on it."
> United States v. Stone, 575 F.3d 83 at 93 (1st Cir. 2009).  Indeed,
> it should.  Lest we forget, criminal sentences serve many purposes,
> not the least of which is punishment.  The sentence for a particular
> criminal act is not determined by feeding objective data about the
> costs of the criminal behavior on society, recidivism rates, and so
> forth into a formula that produces a sentencing range with
> scientific rigor.  Though data is important, guideline sentences
> embody normative judgments about how unacceptable an action is.
> Actions that deviate further from society's norms-that are viewed
> as more reprehensible-warrant greater punishment.
>
> * * *
>
> Thus, like the sentencing court in Stone, this Court agrees that "a
> direct reflection of a congressional expression of popular will [in
> these particular Guidelines] is an argument in favor, not against the
> imposition of a guideline sentence.... Congress is, after all, the
> elected representatives of the people of this country, and [it] has
> made policy choices about this type of crime, and those choices are
> reflected in the guideline range." Id. at 87.

United States v. Wellman, 716 F.Supp.2d 447, 453 (S.D. W.Va., Jun. 2, 2010).

Again, the government does not intend to recommend a guideline sentence here. However, "[p]ossessing and distributing child pornography are not activities that society is prepared to tolerate.  By increasing the penalties pertaining to child pornography offenses, Congress has expressed its belief that distributing and possessing child pornography are repugnant and unacceptable acts warranting severe punishments." Id.

Due consideration ought to be given to Defendant's victims, the children depicted in the images he possessed, distributed, and traded online. Those victims and their loved ones have spoken through victim impact statements such as this:

> All those who trade these images and thereby create the demand for lurid and violent depictions of children are participants in the exploitation of my daughter. Each traded picture that placed a value on inventiveness, novelty, or cruelty played a role in egging on the abuser to even more vile acts.

<u>Victim Impact Statement</u>, Jan_Feb series.

Despite Defendant's protestations of family circumstance, depression, and his own sex abuse,[5] his sentence must reflect the seriousness of this offense and provide just punishment. <u>See</u> 18 U.S.C. 3553(a)(2)(A). Incarceration will provide just punishment, and will afford adequate deterrence – both to Defendant and those who would similarly possess and distribute images of child sex abuse.

Defendant identifies three recent child pornography prosecutions in which defendants here in Boston federal court were sentenced to probation – Paul Proulx, Christopher Reardon, and Paul Teves. Those three sentences, meted out by the same session, should be seen as an anomaly. More representative of appropriate sentences in this courthouse are defendants before several other Judges who have been sentenced to incarceration ranging from 18 to 30 months.[6]

---

[5] The government would ask the Court to view Defendant's claim of sex abuse with caution as the uncorroborated assertion comes late and at a time where such a self-serving claim would benefit the Defendant.
[6] Most notably, in the sentencing of Richard A. Doherty, Jr. (11-CR-10328), the Court sentenced Mr. Doherty to 18 months incarceration, noting that the Court did not believe Mr. Teves' probationary sentence was reasonable.

6

## CONCLUSION

For the reasons set forth herein, the government urges the Court to reject Defendant's request for a probationary sentence. Instead, the government recommends that Defendant be sentenced to a term of incarceration with a significant term of supervised release to follow.

                                              Respectfully submitted,

                                              CARMEN M. ORTIZ
                                              United States Attorney

                                              /s/ *Michael I. Yoon*
                                              Michael I. Yoon
                                              Assistant United States Attorney

Dated: August 3, 2012

Certificate of Service

  I hereby certify that on August 3, 2012, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant:

Mark W. Shea
Shea and LaRocque Law Offices
47 Third Street, Suite 201
Cambridge MA  02141-1265

                */s/ Michael I. Yoon*
                Michael I. Yoon